UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-280-FDW

| JAMES BUCHNOWSKI, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) |
| | ) **ORDER** |
| DAVID STREET, et al., | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on a Motion to Dismiss, (Doc. No. 25), by Defendants David Street, Dexter Gibbs, and Mike Slagle.

**I.     BACKGROUND**

Pro se Plaintiff James Buchnowski is a state prisoner currently incarcerated at Avery/Mitchell Correctional Institution in Spruce Pine, North Carolina. Plaintiff is serving a 70-93 month sentence, after being convicted of second-degree rape in Mecklenburg County, North Carolina in 2008. Plaintiff filed this action on October 10, 2017, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights under the Eighth Amendment and his Due Process and Equal Protection rights under the Fourteenth Amendment. (Doc. No. 1). Specifically, Plaintiff claims that, under the North Carolina Department of Public Safety's Division of Adult Corrections and Juvenile Justice ("DAC") policy governing the promotion of felons, he is eligible for minimum custody because he has less than sixty months left to serve on his sentence, but that Defendants have refused to promote him. (Doc. No. 26-2: Ex. A, DAC Policy, Ch. C, §

1

.0500, 0503(a) & (b)(1), Promotion of Felons, Iss. Nov. 16, 2011).  Plaintiff claims that Defendants' wrongful denial of promotion to minimum custody violates his Due Process and Equal Protection rights under the Fourteenth Amendment and his Eighth Amendment right to be free from cruel and unusual punishment.  For relief, Plaintiff seeks the following: (1) a declaration that Defendants' conduct has violated his constitutional rights; (2) an injunction promoting him to minimum custody; (3) compensatory damages (based on the wages he claims has lost by virtue of his wrongful ineligibility for work release); and (4) punitive damages.

On December 4, 2017, following a frivolity review, this Court allowed Plaintiff to proceed on his claims.  (Doc. No. 11).  On March 12, 2018, Defendants filed the pending motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 25).  On March 13, 2018, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion to dismiss.  (Doc. No. 27).  Plaintiff filed a response to the motion to dismiss on May 3, 2018. (Doc. Nos. 32, 33).  Thus, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted.  A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim.  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993).  Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2).  To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a

speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the Plaintiff. Priority Auto Grp., Inc. v. Ford Motor Credit Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

### III.     DISCUSSION

**A. Plaintiff's Claims to Declaratory or Injunctive Relief**

Article III, section 2 of the Constitution requires that "an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed." Preiser v. Newkirk, 422 U.S. 395, 401 (1975). An actual, ongoing controversy is required because the federal courts are without authority "'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Church of Scientology of Calif. v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)).

Because a litigant must have a redressable stake in the outcome of the litigation at all

3

times, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992), mootness is a threshold issue determinative of federal jurisdiction. North Carolina v. Rice, 404 U.S. 244, 246 (1971). Since Plaintiff filed this suit, DAC has promoted him to minimum custody. See (Doc. No. 26-3, Ex. B, DAC, Public Offender Information - James Buchnowski, as visited Mar. 8, 2018, p. 1, (denoting minimum custody)). Because an actual, ongoing controversy over Plaintiff's promotion to minimum custody no longer exists, Plaintiff's claims for declaratory or injunctive relief are moot and will be dismissed.

**B. Plaintiff's Claims Alleging that Defendants Violated Prison Policy**

Plaintiff alleges in much of the Complaint that Defendants have shirked their responsibilities as defined in DAC policies. "Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." Conn v. Gabbert, 526 U.S. 286, 290 (1999). See also Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003) (observing that 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state statutes or administrative regulations). Accordingly, the existence of prison policy designed to regulate the conduct of prison employees does not entitle an inmate to sue to enforce the regulations or for damages as a result of their breach. Indeed, "[a] violation of internal prison policy no more establishes liability under 42 U.S.C § 1983 than compliance with a prison policy would preclude a finding of liability." Manley v. Daniels, No. 3:11-cv-320, 2012 WL 5411861, at *4 (N.D. Ind. Nov. 2, 2012) (unpublished). In sum, to the extent that any of Plaintiff's claims are premised on Defendant's violations of prison policies, they will be dismissed.

**C. Plaintiff's Claims Against Supervisory Defendant Slagle**

Next, as to Defendant Slagle, Administrator of Mountain View Correctional Institution,

4

Section 1983 does not establish a system of vicarious responsibility. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 692-93 (1978). In other words, liability under Section 1983 depends on each defendant's personal knowledge and actions, not on the knowledge or actions of others. Supervisory liability ultimately is determined by pinpointing the persons in the decision-making chain whose personal deliberate indifference permitted constitutional abuses to continue unchecked. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (internal quotation marks and citations omitted).

Supervisory liability under Section 1983 is dependent on a showing that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Id. at 799.

Actual or constructive knowledge is shown by: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Id. A pervasive and unreasonable risk of harm is established by evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id. Deliberate indifference is established by demonstrating "[a] supervisor's continued inaction in the face of documented widespread abuses." Id. Causation is established when the plaintiff demonstrates an affirmative causal link between the supervisor's inaction and the entailing harm suffered by the plaintiff. Id.

Here, Plaintiff pleads no wrongdoing by Slagle, but simply claims he is responsible by virtue of his supervisory position, and Plaintiff makes no claim Slagle was aware of, and ignoring, widespread documented abuses. Thus, Plaintiff allegations fail to set forth a facially plausible claim of supervisory liability, and Plaintiff's claims against Slagle will therefore be dismissed.

**D. Plaintiff's Due Process Claim**

Next, as for Plaintiff's claim for a violation due process as to the remaining Defendants, consideration of whether a due process violation has occurred requires first that a protected liberty interests exists and, if so, determination of what process is necessary to protect it. Sandin v. Conner, 515 U.S. 472, 484 (1995); see also Incumaa v. Stirling, 791 F.3d 517, 527 (4th Cir. 2015); Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002). A liberty interest subject to due process protection may arise from the Constitution itself, or it may arise from an expectation or interest created by state laws or policies. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). A protectable state-created liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. at 484 (citations omitted). Harsh or atypical prison conditions do not in and of themselves give rise to a protectable liberty interest; rather, due process protections are triggered by the prisoner's interest in avoiding erroneous placement under the classification regulations combined with the harsh and atypical conditions they engender. Prieto v. Clarke, 780 F.3d 245, 251 (4th Cir. 2015).

**1. Applicable North Carolina Law and DAC Policies**

North Carolina law delegates to the "Secretary of Public Safety" the "control and custody

of all prisoners serving [a] sentence in the State prison system" and provides that such prisoners "shall be subject to all the rules and regulations legally adopted for the government thereof." N.C. GEN. STAT. § 148-4. Additionally, "[t]he Secretary of Public Safety may issue regulations regarding the grades of custody in which State prisoners are kept, [and] the privileges and restrictions applicable to each custody grade[.]" Id. § 148-13(a).

Plaintiff is serving two consecutive sentences for second-degree rape. According to North Carolina law, second-degree rape is a sexually violent offense. Id. § 14-208.6(5) (defining a sexually violent offense as a violation of N.C. GEN. STAT. § 14-27.22 (second-degree forcible rape). Persons with a "reportable conviction" are required to register as a sex offender with the county sheriff of their residence. Id. § 14-208.7.

A "reportable conviction" includes sexually violent offenses. Id. § 14-208.6(4). DAC policy identifies "sex offenders" as "inmate[s] who [have] been convicted of a sex crime requiring registration" pursuant to "the North Carolina Sex Offender and Public Protection Registration Programs." (Doc. No. 26-4, Ex. C, DAC Policy, Ch. C, §§ .2500, .2502, .2506, Community Based Programs for Sex Offenders. Iss. June 25, 2010). Thus, under DAC policy, Plaintiff is subject to the custody, classification, and promotion policies governing sex offenders.

Before a sex offender like Plaintiff can be promoted to minimum custody, he (1) must have a positive risk assessment and must be actively participating in his Case Management Plan; (2) must receive a minimum case factor score or have a justifiable rationale for a positive override; (3) must have completed some type of sex offender treatment or sex offender education; and (4) must have signed an agreement acknowledging the parameters of his minimum custody promotion. (Id. § .2503). "Sex offender treatment" is defined as "The Sex Offender Accountability and Responsibility Program (SOAR)." (Id. § .2502). "Sex Offender

7

Education" is defined as "Life Skills programs such as Cognitive Behavior Intervention [CBI]." (Id.).

**2. Plaintiff Has No Protectable Liberty Interest in His Custody Classification**

The courts generally do not become involved in reviewing discretionary decisions of prison administrators because such decisions do not involve due process. Meachum v. Fano, 427 U.S. 215, 224-25 (1976). The hallmark of a statute that has created a liberty interest is a lack of discretion. See id. at 226-27; Smith v. Ashcroft, 295 F.3d 425, 428 (4th Cir. 2002). Accordingly, where a statute grants prison administration discretion, or does not act to meaningfully limit that discretion, the government has conferred no right on the inmate. See Kitchen v. Upshaw, 286 F.3d 179, 184 (4th Cir. 2002). Here, the North Carolina statutory scheme affords wide latitude to the Secretary of Public Safety to promulgate prison policy. The Secretary, in turn, has promulgated policies that—within defined parameters—afford wide latitude to prison administration to develop Case Plans, to determine compliance therewith, and to determine appropriate custody levels. Accordingly, Plaintiff has no protectable liberty interest in his custody classification. See O'Bar v. Pinion, 953 F.2d 74, 83 (4th Cir. 1991) (holding that changes in prisoners' location, variations of daily routine, changes in conditions of confinement, and the denial of privileges are matters contemplated within the scope of the original sentence to prison and do not rise to a protectable liberty interest); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (same).

Further, even if Plaintiff had a protectable liberty interest in promotion to minimum custody and its attendant opportunities, he has not shown that he complied with all preconditions necessary to merit promotion to minimum custody, such that Defendants arbitrarily refused to promote him. To the contrary, despite being informed during the grievance procedure that policy

required his completion of the SOAR program or CBI before promotion to minimum custody, (Doc. No. 1, ¶ 23; Exs., Doc. No. 1-1 at p. 13), Plaintiff contends he cannot be compelled to participate. (Id. ¶ 31 ("The plaintiff is unaware of any state policy that requires or mandates an inmate to take a class or program to be promoted or released from prison. Case managers can make a management plan and hope or expect the inmate to follow it, but the inmate is not required to abide by it to be released or promoted.")).

Additionally, even if Plaintiff had a protectable liberty interest in his custody classification, Plaintiff's interest, if any, would be in avoiding erroneous placement under the classification regulations, combined with the harsh and atypical conditions they engender. Prieto, 780 F.3d at 251. Here, the crime of conviction establishes the prerequisites for sex offenders' promotion to minimum custody. Despite Plaintiff's contentions to the contrary, he was convicted of a qualifying sex crime. "When determining the baseline for atypicality, a court must consider whether the confinement conditions are imposed on a prisoner because of his conviction and sentence. For conditions dictated by a prisoner's conviction and sentence are the conditions constituting the ordinary incidents of prison life for that prisoner." Id. at 253 (citing Sandin, 515 U.S. at 484 and Lovelace, 472 F.3d at 202) (internal quotation marks omitted).

A prison inmate "can only be deprived of that to which he is entitled. Thus, in determining whether a deprivation imposes a significant or atypical hardship on him, the court must use as its benchmark the incidents of prison life to which he is entitled." Id. at 254. All sex offenders seeking promotion to minimum custody face the same educational or treatment requirements. Thus, Plaintiff's rightful classification as a sex offender has not singled him out for atypical hardship compared to his peer group. See id. (stating that "conditions will differ depending on a particular inmate's conviction and the nature of nonpunitive confinement

9

routinely imposed on inmates serving comparable sentences") (quoting <u>Rezag v. Nalley</u>, 677 F.3d 1001, 1012 (10th Cir. 2012)).

Finally, even if Plaintiff had a state-created liberty interest in avoiding the education and treatment preconditions incumbent on sex offenders before promotion to minimum custody, Plaintiff has been afforded all process due related to that assignment. Due process is a flexible concept and varies with the interest at stake. <u>Wilkinson</u>, 545 U.S. at 224. Evaluating the sufficiency of particular prison procedures requires consideration of: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirement would entail. <u>Id.</u> at 224-25. Here, the delay in a sex offender's promotion to minimum custody is finite, of short duration, and primarily in his control. Completion of the preconditions makes a sex offender eligible for promotion to promotion to minimum custody on the classification officer's recommendation. (Doc. No. 26-2, Ex. A, § .0502(a)). The custody level recommendation must be documented and is subject to review by the approving authority. (<u>Id.</u>). As an added procedural safeguard, the case factor analysis process is subject to override upon the approval of the facility head. (<u>Id.</u> § .0505(a)). In short, the process is wholly sufficient given a sex offender's minimal, if any, interest in his promotion to minimum custody. In sum, Plaintiff has no protected liberty interest in avoiding sex offender pre-conditions before promotion to minimum custody, and, even if he did, the attendant procedures protected his due process rights. Plaintiff's due process claim will therefore be dismissed.

**E. Plaintiff's Equal Protection Claim**

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney Gen. of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). The government's treatment of dissimilarly situated persons in a dissimilar manner does not violate the Equal Protection Clause. Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994).

To establish a claim under the Equal Protection Clause, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." Sweet v. Secretary, Dep't of Corr., 467 F.3d 1311, 1318-19 (11th Cir. 2006). Evidence that merely indicates disparity of treatment, or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. See McCleskey v. Kemp, 481 U.S. 279 (1987). Once the prisoner has made the first two showings, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

The similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group for purposes of the challenged government action. Here, Plaintiff wrongly compares his promotional opportunities to the promotional opportunities of the general prison population, but sex offenders and the general prison population are not similarly situated.

Even assuming that the DAC imposes stricter requirements on sex offenders for custody

11

promotions, this does not violate Plaintiff's right to equal protection. Sex offenders are not considered a suspect class, Doe v. Moore, 410 F.3d 1337, 1346 (11th Cir. 2005), and custody classification is not a fundamental right, O'Bar, 953 F.2d at 83. Thus, Plaintiff must show that there is no rational basis for the DAC to have imposed stricter minimum custody promotional requirements on sex offenders. See Leib v. Hillsborough Cnty. Pub. Transp. Comm'n, 558 F.3d 1301, 1306 (11th Cir. 2009) (explaining that, if there is no protected class or fundamental interest at stake, "the law need only have a rational basis—i.e., it need only be rationally related to a legitimate government purpose"). The DAC sex-offender promotion policy serves rational public safety and penological interests. First, it protects the public and ensures that only those sex offenders best suited for minimum custody and its attendant benefits—including work release—are promoted. Second, it induces sex offender treatment and education, and may curb recidivism. For all these reasons, Plaintiff's equal protection claim will be dismissed.

**F. Plaintiff's Eighth Amendment Claim**

The Eighth Amendment's prohibition on cruel and unusual punishment applies when the conditions of confinement compose the punishment at issue. Prieto, 780 F.3d at 251 (citations and quotation marks omitted). Allegations that prison conditions involve the wanton and unnecessary infliction of pain, or are grossly disproportionate to the severity of the crime, or are without any penological purpose, fall within the ambit of the Eighth Amendment. Id. Here, the DAC properly classified Plaintiff as a sex offender, and the conditioning of certain privileges, such as promotion to minimum custody on the condition of participation in sex offender treatment or education, does not amount to cruel and unusual punishment. See Gwinn v. Awmiller, 354 F.3d 1211, 1228 (10th Cir. 2004).

The sex offender classification scheme and its promotional prerequisites are not

12

conditions of confinement in the Eighth Amendment sense. Rather, they serve invaluable penological and public safety purposes. DAC holds out the promise of promotion to minimum custody to sex offenders as a nonpunitive inducement to participate in treatment or education. It ensures that only those sex offenders best suited for minimum custody and its attendant benefits are promoted and it reduces recidivism. However, as Defendants note, even if viewed as a condition-of-confinement claim in the Eighth Amendment sense, conditions imposed on prisoners that are restrictive or even harsh are simply the natural consequences of crimes for which the prisoners were sentenced. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Plaintiff's ineligibility for promotion absent educational or treatment participation is a natural consequence of his crime of conviction and is simply not cruel and unusual punishment. For all these reasons, Plaintiff's Eighth Amendment claim will be dismissed.

### IV. CONCLUSION

For the reasons stated herein, Plaintiff's action is dismissed.

**IT IS, THEREFORE, ORDERED** that:

(1) Defendants' Motion to Dismiss, (Doc. No. 25), is **GRANTED**, and Plaintiff's action is dismissed.

(2) The Clerk is directed to terminate this action.

Signed: July 8, 2018

Frank D. Whitney
Chief United States District Judge